# EXHIBIT 14

2018 WL 4871039
Only the Westlaw citation is currently available.
United States District Court, W.D. Oklahoma.

Sherry DENNIS, Plaintiff,
v.
PROGRESSIVE NORTHERN
INSURANCE COMPANY, Defendant.

Case No. CIV-17-182-SLP
|
Signed 04/09/2018

**Attorneys and Law Firms**

George Gibbs, Christopher D. Wolek, George R.
Mullican, Matthew B. Covert, Michael P. Womack,
Robert D. Hart, Gibbs Armstrong Borochoff Mullican &
Hart, Tulsa, OK, for Plaintiff.

Benjamin M. McCaslin, Dawn M. Goeres, Gerard F.
Pignato, Justin R. Williams, Brad Leslie Roberson, Paul
M. Kolker, Tom Cooper, Pignato Cooper Kolker &
Roberson PC, Oklahoma City, OK, for Defendant.

## ORDER

SCOTT L. PALK, UNITED STATES DISTRICT
JUDGE

**\*1** Before the Court are Defendant's Motions in
Limine. [1] Plaintiff has responded to the Motions. [2] And,
as to certain Motions, Defendant has filed replies. [3] These
matters, therefore, are fully briefed and at issue. [4]

### I. Introduction

In this action, Plaintiff sues her insurer, Progressive
Northern Insurance Company (Progressive or
Defendant), for bad faith breach of insurance contract.
Plaintiff's insurance claim arises from an automobile
accident in Kay County, Oklahoma. Plaintiff suffered
injuries as a result of the accident.

Uninsured/underinsured motorist (UM) insurance
coverage for the accident existed under a personal policy
Plaintiff had with Progressive. In addition, Plaintiff
had coverage under a commercial policy issued to her

employer through Zurich American Insurance Company
(Zurich).

Progressive paid the policy limits to Plaintiff in September
2014, but not until after Plaintiff filed a state-court action
against Progressive. In April 2015, Plaintiff added Zurich
as a defendant in the state-court action. Then, Plaintiff
filed a dismissal without prejudice of its claims against
Progressive. In February 2017, Plaintiff proceeded to trial
against Zurich and obtained a favorable jury verdict.
Approximately one month later, in March 2017, Plaintiff
entered into a settlement agreement with Zurich. A few
days after the jury verdict but before the settlement with
Zurich, on February 21, 2017, Plaintiff re-filed her claims
against Progressive in this federal-court action.

### II. Governing Standard

"The purpose of a motion *in limine* is to allow the
Court to decide evidentiary issues in advance of trial to
avoid delay and ensure an evenhanded and expeditious
trial." *Dry Clean Super Ctr., Inc. v. Kwik Indus., Inc.*,
No. 08-cv-578-WJM-CBS, 2012 WL 503510 at \*4 (D.
Colo. Feb. 15, 2012) (unpublished op.). "Properly filed
motions *in limine* 'permit[ ] the trial judge to eliminate
from further consideration evidentiary submissions that
clearly ought not to be presented to the jury because
they clearly would be inadmissible for any purpose.' " *Id.*
(quoting *Jonasson v. Lutheran Child and Family Servs.*, 115
F.3d 436, 440 (7th Cir. 1997) ). Motions in limine "are
designed to narrow the evidentiary issues for trial and to
eliminate unnecessary trial interruptions." *Graves v. Dist.
of Columbia*, 850 F.Supp.2d 6, 10 (D.D.C. 2011) (internal
quotation marks and citation omitted). Some in limine
rulings, like those involving balancing under Rule 403,
are necessarily preliminary because the required balancing
may be reassessed as the evidence actually comes in. Thus,
a court's in limine rulings are subject to change as the case
unfolds or at its discretion. *Luce v. United States*, 469 U.S.
38, 41-42 (1984).

**\*2** Motions in limine should not be used to weigh the
sufficiency of the evidence. *Kwik Indus.*, 2012 WL 503510
at \*4 (citation omitted). A motion in limine is not the
proper vehicle for seeking a dispositive ruling on a claim,
particularly after the deadline for filing such motions has
passed." *Hana Fin., Inc., v. Hana Bank*, 735 F.3d 1158,
1162 n. 4 (9th Cir. 2013). The sufficiency of the evidence "is
the function of a motion for summary judgment, with its
accompanying and crucial procedural safeguards." *Kwik*

*Indus.*, 2012 WL 503510 at *4 (internal quotations marks and citations omitted).

### III. Discussion

#### First Motion in Limine – Oklahoma's
#### Unfair Claims Settlement Practices Act

Progressive moves to preclude the admissibility of evidence related to Oklahoma's Unfair Claims Settlement Practices Act, Okla. Stat. tit. 36, § 1250.1 et seq. (the OUCSPA). The OUCSPA "does not establish standards of care or standards of conduct for measuring whether an insurer has violated its duty of good faith and fair dealing." *Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyd's of London*, 348 P.3d 216, 223 (Okla. Civ. App. 2014). In fact, the UCSPA "does not create a private remedy" at all. *Id.*

Plaintiff relies upon *Beers v. Hillory*, 241 P.3d 285, 294 (Okla. Civ. App. 2010), to argue that the OUCSPA is admissible because it "can provide the district court with guidance in determining whether particular conduct on the part of an insurer is unreasonable and sufficient to constitute a basis for a bad faith claim." *See id.* Plaintiff further contends that Progressive incorporated the OUCSPA "into its policies, procedures, and training of its employees" and "used the Act to set standards of conduct." Pl.'s Resp. at 4. [5] Plaintiff identifies three specific unfair claim settlement practices under the OUCSPA she purportedly intends to rely upon at trial to show that "Progressive violated the act and its internal policies." *Id.* at 6. The three practices are:

1. Failing to fully disclose to first party claimants, benefits, coverages, or other provisions of any insurance policy or insurance contract when the benefits, coverages or other provisions are pertinent to a claim;

3. Failing to adopt and implement reasonable standards for prompt investigations of claims arising under its insurance policies or insurance contracts; and

4. Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear.

Okla. Stat. tit. 36, § 1250.5 (1), (3), and (4).

Plaintiff argues that evidence of § 1250.5(1)-type practices exists under the "other insurance" language of the policy, which Plaintiff contends violates Oklahoma law. Pl.'s Resp. at 7-8. Under § 1250.1(3), Plaintiff argues that "Progressive has no set guideline or internal standard regarding a time frame or deadline to evaluate a claim." *Id.* at 8. Finally, Plaintiff argues that § 1250.5(4) is relevant and points to the transfer of Plaintiff's claim to a different adjustor, Robin LaCava, after Plaintiff filed her first lawsuit against Progressive but before Progressive paid the policy limits to her. *Id.* at 9-11.

In *Beers*, the court held that "breach of a duty imposed by section 1250.5 is not a violation of the [OUCSPA]" and that "[a] violation occurs only if the insurer's failure to conform to some requirement of the statute is found to be flagrant or to constitute a business practice." *Id.*, 241 P.3d at 294 (*citing* Okla. Stat. tit. 36, § 1250.3). [6] In *Beers*, the insurer demanded its insured to execute a release with defend, indemnify and hold harmless provisions. The court concluded that it was not bad faith for the insurer to request its insured to sign a release, but an issue of fact existed as to whether the scope of the release was overly broad and, therefore, constituted bad faith. In this context, the court found § 1250.5(8) of the OUCSPA, which "prohibits an insurer from requesting an insured 'to sign a release that extends beyond the subject matter that gave rise to the claim of payment' " could provide guidance "to the district court" as to whether the insurer's conduct constituted bad faith. *Id.* at 293 (*quoting* § 1250.5(8) ).

**\*3** In *Aduddell*, the court found a jury instruction on the OUCSPA in a bad faith case against an insurer was "contrary to law and prejudicial." *Id.*, 348 P.3d at 222. The court expressly noted that *Beers* allowed consideration of the OUCSPA "in the context of a district court's consideration of a motion for summary judgment." *Id.* at 224. The court acknowledged that the OUSCPA "may provide guidance to a trial court in determining whether to grant summary judgment, but it does not function as an appropriate guide for a jury to determine bad faith." Id.

In light of *Aduddell*, evidence that Progressive's conduct allegedly violated the OUCSPA would be unduly prejudicial. *See* Fed. R. Evid. 403. The jury will be properly instructed on the elements of a bad faith claim. Introducing a practice that arguably violates the OUCSPA, for which no private right of action exists, will

cause undue confusion and should be excluded. Therefore, the Court grants Progressive's first motion in limine.

### Second Motion in Limine – Evidence Regarding Qualifications of Robin LaCava, Esquire and Alleged Conflicts of Interest

Robin LaCava is a former Progressive employee and was the adjustor assigned to Plaintiff's claim after Plaintiff filed her state-court action against Progressive. Progressive moves for an order precluding the admission of evidence relating to the fact that Ms. LaCava did not have an Oklahoma insurance adjuster's license. Progressive also moves to preclude the admission of evidence regarding any conflict of interest that might have existed among: (1) Ms. LaCava; (2) Brad Roberson, outside counsel and lead trial counsel for Progressive in this action; (3) Progressive; and (4) Plaintiff.

The Court finds Progressive's second motion covers too broad a sweep for purposes of a pretrial admissibility ruling. However, to the extent Plaintiff attempts to interject provisions of the Oklahoma Insurance Adjusters Licensing Act (the OIALA) into this action, for substantially the same reasons set forth regarding admissibility of the OUCSPA, the Court grants Progressive's motion. Plaintiff does not bring a claim under the OIALA nor does Plaintiff point to any authority that the OIALA creates a private right of action. Introduction of evidence related to the OIALA or purported violations of its provisions would give rise to undue prejudice and confusion. *See* Fed. R. Evid. 403. The Court reserves any ruling on the admissibility of evidence related to conflicts of interest issues. Plaintiff is admonished to approach the bench prior to seeking the introduction of any such evidence. Accordingly, Progressive's second motion in limine is granted in part and denied without prejudice in part.

### Third Motion in Limine – Evidence of Progressive's Litigation Practices, Strategies and Tactics

In its third motion, Progressive moves to exclude evidence that litigation practices implemented by Progressive through Ms. LaCava and Mr. Roberson demonstrate bad faith as a matter of law. Progressive refers to this evidence as Plaintiff's "litigation practices" theory of bad faith. *See* Def.'s Mot. at 7. Progressive's motion in limine appears, in many respects, to be a belated request for a summary judgment ruling. To that end, Progressive's motion is improper. In all other respects, the Court finds premature any ruling on the admissibility of the general evidence addressed by the motion. In this case, Progressive did not pay the policy limits to Plaintiff until several months after Plaintiff filed her state-court lawsuit against Progressive. Thus, Progressive's post-litigation conduct, at least as pertinent to demonstrating an unreasonable delay in payment, may be relevant to the issue of bad faith. The Court reserves any ruling until trial, at which time the Court can determine, in the context of specific testimony or other evidence, whether that evidence is properly admitted. Progressive's third motion in limine is denied without prejudice.

### Fourth Motion in Limine – Exclusion of "Per Diem" or "Unit of Time" Arguments to Valuate Plaintiff's Non-Economic Damages

**\*4** Progressive requests an in limine ruling to preclude Plaintiff from making "per diem" or "unit of time" damages arguments. In the Tenth Circuit, this matter is left to the discretion of the trial court. *McDonald v. United Airlines, Inc.*, 365 F.2d 593, 595 (10th Cir. 1966); *cf. Rodriguez v. Senor Frog's De La Isla, Inc.*, 642 F.3d 28, 37 n. 3 (1st Cir. 2011) (collecting circuit authority and recognizing that the First Circuit's "outright ban [of such arguments] is clearly out of step with the prevailing federal practice").

Progressive points to Plaintiff's per diem damages arguments made in the state-court action against Zurich. Whether, in the context of the evidence presented at this trial, a per diem or unit of time damages argument should be banned altogether in this action must be addressed in the context of the evidence presented at the trial of this action. The Court, therefore, denies without prejudice Progressive's fourth motion in limine. Plaintiff is cautioned, however, that the Court will not tolerate argument or conduct designed to invade the trial with passion, prejudice or other improper purpose.

### Fifth Motion in Limine – Evidence of Progressive's Internal Claim Handling Standards

Progressive next moves to preclude Plaintiff from introducing Progressive's own claims handling standards as evidence of the applicable standard governing Plaintiff's bad faith claim. Progressive points to Tenth Circuit authority holding that under Oklahoma law, an insurer does not act in bad faith "by simply failing to adopt written standards or provide state-specific training to its employees." *Flores v. Monumental Life Ins. Co.*, 620 F.3d 1248, 1256 (10th Cir. 2010). Here, however, a lack of any written standards does not appear to be the crux of the dispute. Instead, in the course of depositions taken in this case, Plaintiff appears to have questioned Progressive employees about its claims handling policies and practices and inquired as to whether, in the context of the handling of Plaintiff's claim, those policies and practices were followed. Progressive's concern is that Plaintiff will attempt to introduce Progressive's internal claims handling standards as "evidence *of* the standard of care" and not as "evidence of a *breach* of the applicable standard of care." *See* Def.'s Reply at 2. It appears to the Court that Progressive's concern may be alleviated through proper instruction to the jury. However, without specific evidence before it, the Court finds any ruling on this issue is premature. [7] Plaintiff is cautioned that misstatements of the law or the applicable standard of care will not be tolerated. At this time the Court denies Progressive's fifth motion in limine without prejudice.

### Sixth Motion in Limine – Exclusion of Any Reference that Plaintiff Incurred Greater than 28,000 in Medical Bills Between August 2012 and June 2013

Progressive cites Okla. Stat. tit. 12, § 3009.1 (2011) in support of its argument that the Court should preclude the admissibility of evidence that Plaintiff "incurred greater than $28,000.00 in medical bills." Def.'s Mot. at 1. As an initial matter, Progressive fails to address whether the statute even applies to this action. The statute limits the admissibility of evidence of medical bills in "any case involving personal injury." *Id.*, § 3009.1(A). The sole claim in this action is bad faith breach of an insurance contract.

**\*5** Even if Progressive could surpass that initial hurdle, in this action Plaintiff does not seek any damages for financial loss. Instead, Plaintiff seeks damages only for embarrassment / loss of reputation and emotional distress. As the Court has previously noted, *see* Order [Doc. No. 199], proof of these latter damages "is not necessarily

dependent upon any particular amount of medical bills." *Id.* at 16 n. 11. Progressive's sixth motion in limine is denied.

### Seventh Motion in Limine – Evidence of Progressive's Alleged Inadequate Investigation

Progressive seeks an order from the Court excluding evidence "suggesting Progressive's investigation of Plaintiff's underinsured motorist ("UIM") claim was inadequate." In support, Progressive includes a section of "undisputed facts." *See* Mot. at 10.

In response, Plaintiff contends Progressive's purported request to exclude evidence is, in fact, a request for a merits ruling on Plaintiff's bad faith claim and would require the Court to determine the sufficiency of the evidence. Plaintiff argues that Progressive is not permitted to use a motion in limine to urge what is, in effect, a motion for summary judgment.

In its reply, Progressive does not dispute the "general proposition that the issue of whether it performed a reasonable investigation under the circumstances that existed from the time Plaintiff requested Progressive's performance to the time Progressive tendered its UIM payment to Plaintiff is an issue of fact for the jury." Def.'s Reply at 8. Nonetheless, Progressive argues that the Court should exclude eleven categories of evidence – i.e., evidence related to eleven actions Plaintiff has identified Progressive should have taken in the course of investigating Plaintiff's claim – because "there is no evidence that any of these actions would have impacted Plaintiff's UIM claim in any way." *Id.* at 10. Although Progressive urges it is not seeking an impermissible summary judgment ruling, Progressive's request borders on just that.

Progressive's seventh motion in limine is denied without prejudice. Progressive can make contemporaneous objections at trial to the eleven categories of evidence cited. But without specific evidence and without specific context as to how the evidence might be introduced, any ruling at this time is premature.

### Eighth Motion in Limine – Exclusion of All Testimony and Evidence Regarding Religious Beliefs of Plaintiff's and Terry Dennis' "Call to the Ministry"

Progressive moves for an order in limine "barring Plaintiff, Plaintiff's counsel, Plaintiff's witnesses and Terry Dennis in particular from discussing their religious beliefs, stating Plaintiff or Terry Dennis are 'in the ministry' or 'called to the ministry,' identifying Terry Dennis as a 'chaplain' or 'ordained minister,' or providing any testimony or evidence concerning their faith[.]" Def.'s Mot. at 6-7. Plaintiff responds that "the nature of Plaintiff's damages – loss of reputation, embarrassment, and mental pain and suffering – are [sic] directly impacted by Plaintiff and Terry Dennis' positions in their community and their faith." Pl.'s Resp. at 1.

Rule 610 of the Federal Rules of Evidence provides that: "[e]vidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility." Fed. R. Evid. 610. Rule 610's prohibition is expressly limited to use of such information to attack or support a witness's credibility. The Court will enforce the requirements of Rule 610 at trial. But Plaintiff has identified other reasons why introduction of such evidence might be relevant. The Court, therefore, declines to make a blanket ruling in advance of trial prohibiting Plaintiff or her husband from making any reference to their religion, religious beliefs, or occupation. Progressive's concerns can be more adequately addressed at trial by way of contemporaneous objections to any such evidence. Progressive's eighth motion in limine, therefore, is denied without prejudice.

### Ninth Motion in Limine – Evidence of Breach of the Commercial Policy

**\*6** In its ninth motion in limine, Progressive moves for entry of an order prohibiting the admission of evidence, testimony or argument concerning any alleged bad faith conduct by Progressive in the course of handling Plaintiff's UM claim made on a commercial policy issued to her employer (the Commercial Policy). It was later determined that Plaintiff was not insured under the Commercial Policy and Plaintiff has not brought any claims in this action against Progressive based on the Commercial Policy.

Plaintiff contends that Progressive's bad faith conduct stems, in part, from an alleged improper pro rata agreement between Linda Riley, the Progressive adjuster assigned to Plaintiff's personal UM policy, and Greg Huff, the Zurich adjuster assigned to Plaintiff's UM claim brought pursuant to that policy. Plaintiff argues the Commercial Policy is relevant because it was referenced by Ms. Riley and Mr. Huff during their communications regarding the alleged improper pro rata agreement. *See* Pl.'s Resp. at 4 ("The commercial policy is relevant to provide the context of the discussion between Huff and Riley that resulted in the illegal pro rata agreement."). But Plaintiff further contends the Commercial Policy is relevant because it contains an "other insurance" provision that "track[s] with the pro rata agreement between Progressive and Zurich." *Id.*

The Court grants Progressive's ninth motion in limine to the extent Progressive seeks to exclude the admission of evidence, testimony or argument concerning any alleged bad faith conduct by Progressive in the course of handling Plaintiff's UM claim made on the Commercial Policy. But the Court denies Progressive's ninth motion in limine to the extent it seeks to exclude any reference at all to the Commercial Policy. The Court agrees with Plaintiff that the Commercial Policy has some relevance to establishing the context of the communications between Ms. Riley and Mr. Huff and that Plaintiff might need to provide context to those communications by explaining that a Commercial Policy was also at play. But Plaintiff is cautioned that the scope of admissible testimony or evidence related to the Commercial Policy is narrow and Plaintiff is expected to stay within the confines of the Court's ruling at trial. In this regard, Plaintiff shall not be permitted to reference the "other insurance" clause of the Commercial Policy. As stated above, Plaintiff's bad faith claim relates solely to her personal policy with Progressive and is not based on an interpretation of the contract or any coverage dispute but instead based on a delay in payment. Accordingly, as set forth, Progressive's ninth motion in limine is granted in part and denied in part.

### Tenth Motion in Limine – Exclusion of All Testimony that Plaintiff Endured Additional Physical Pain and Suffering as a Result of Defendant's Alleged Actions

Progressive argues in its tenth motion in limine that Plaintiff is impermissibly including damages for *physical* pain and suffering as part of the damages she seeks to recover on her bad faith claim. Progressive contends Plaintiff should be precluded from recovering such damages because she has not disclosed physical pain and suffering as an element of damages in either her discovery responses or disclosures made pursuant to Fed. R. Civ. P. 26. Additionally, Progressive contends Plaintiff cannot testify that her physical pain and suffering is due to any actions of Progressive because under Fed. R. Evid. 702, Plaintiff is not an expert.

**\*7** In response, Plaintiff acknowledges that physical pain and suffering is not part of her claim for damages in this action. But Plaintiff argues that evidence of her physical pain and suffering is relevant to her claim for damages for mental pain and anguish, embarrassment and loss of reputation.

To the extent Progressive challenges, through a motion in limine, Plaintiff's *right to recover damages* for physical pain and suffering, Plaintiff concedes she does not seek any such damages and Plaintiff's concession renders Progressive's motion moot. To the extent Progressive moves to exclude *any evidence of Plaintiff's physical pain and suffering*, the Court reserves its ruling on the admissibility of such evidence until trial. Such evidence may be relevant to Plaintiff's claim for damages for mental pain and anguish. A blanket exclusion of such evidence, therefore, is premature and Progressive's tenth motion in limine is denied without prejudice.

### Twelfth Motion in Limine – Evidence of Plaintiff's Litigation Induced Stress

In its twelfth motion in limine, Progressive anticipates that Plaintiff "will tell the jury in this matter that she has been deposed on four separate occasions and that the litigation process has been draining on her and her family." Def.'s Mot. at 124. Progressive moves to exclude such evidence at trial. In response, Plaintiff states that Progressive's bad faith conduct continued after she filed her initial state-court action against Progressive and that "[w]hile Plaintiff will not seek damages for mental pain and suffering solely 'relating to the litigation process' her mental pain and suffering continued even after she filed suit." Pl.'s Resp. at 220.

The Court finds any ruling on the issues raised in Progressive's twelfth motion in limine is premature and must be reserved for trial where the Court can consider objections in light of specific testimony offered. Progressive's twelfth motion in limine is denied without prejudice.

### Fifteenth Motion in Limine – Inadmissibility of Evidence of Other Claims or Lawsuits Against Defendant

Progressive again moves for an order in limine as to evidence it anticipates Plaintiff may offer – evidence or argument pertaining to "other underinsured motorist claims handled by Progressive, complaints of bad faith by other insureds, or other bad faith lawsuits filed against Defendant." Def.'s Mot. at 2. But Progressive does not identify any specific evidence or testimony of any particular witness in support of this motion. With respect to any claim for punitive damages, Progressive maintains that "[e]vidence of other claims or lawsuits against Progressive should also be excluded to the extent that they are dissimilar from the present case." *Id.* at 6.

In response, Plaintiff cites case law from this judicial district and the Tenth Circuit's decision in *Vining v. Enter. Fin. Grp., Inc.*, 148 F.3d 1206, 1219 (10th Cir. 1998), as authority for allowing the admission of an insurance company's treatment of other insureds for purposes of establishing a pattern or practice of the insurance company. *See* Pl.'s Resp. at 3-5. [8] Plaintiff also contends such evidence is admissible under Fed. R. Evid. 404(b)(2) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 5. Plaintiff points to testimony of Robin LaCava, Progressive's post-litigation adjuster of Plaintiff's UM claim, related to the special handling of UM claims in Oklahoma based on the complexities of Oklahoma law regarding UM coverage. *Id.* at 6.

**\*8** The Court tends to agree with Plaintiff that, at least certain evidence and testimony regarding Progressive's treatment of other UM claims, particularly claims specific to Oklahoma, is both relevant and admissible. But without any specific evidence cited by Progressive, the Court finds any ruling is premature. The Court, therefore, denies Progressive's fifteenth motion in limine without prejudice.

### Sixteenth Motion in Limine – Evidence Progressive's Other Insurance Policy Provision Violates Oklahoma Law

Progressive moves for an order in limine that no evidence, testimony or argument be permitted "suggesting the "OTHER INSURANCE" provision of Policy No. 52201447-1 ("the Personal Policy") violates Oklahoma law." Def.'s Mot. at 6. In her response, Plaintiff argues that "[t]he text of the "other insurance" provision of Progressive's policy supports the inference that Progressive made a pro rata agreement with Zurich." Pl.'s Resp. at 4.

Progressive concedes that the Other Insurance provision is admissible with respect to Plaintiff's claim that Progressive acted in bad faith by allegedly entering into a pro rata agreement with Zurich. In Reply, Progressive makes clear that it does not seek "to bar testimony from its employees concerning how they interpret or apply the " 'Other Insurance' " provision" but only seeks to bar testimony or argument "that this provision violates Oklahoma law." Def.'s Reply at 5.

The Court grants Progressive's sixteenth motion in limine to the extent Progressive moves to exclude evidence, testimony or argument that the Other Insurance provision violates Oklahoma law. For the same reasons discussed in the context of Progressive's first motion in limine, no contractual claims have been asserted in this action and, therefore, any testimony or evidence concerning interpretation of the contract terms, their validity or whether they comply with Oklahoma law is not relevant to Plaintiff's bad faith claim.

### Seventeenth Motion in Limine – Keri Dennis' Testimony Regarding the Nature, Extent and Causation of Plaintiff's Damages

Keri Dennis is the adult daughter of Plaintiff. Progressive's seventeenth motion in limine seeks to exclude the testimony of Keri Dennis "regarding the nature, extent, and causation of Plaintiff's alleged damages of embarrassment, loss of reputation, and pain and suffering." Def.'s Mot. at 5. Progressive claims Keri Dennis's testimony is based entirely on hearsay and speculation.

In response, Plaintiff contends that Keri Dennis's testimony about "changes she perceived in her mother" during the time period relevant to Plaintiff's claims is not hearsay because it is based on her own observations and, therefore, is based on her personal knowledge and perceptions. *See* Fed. R. Evid. 602, 701.

At the pretrial conference held on April 3, 2018, Plaintiff represented that she does not intend to call Keri Dennis as a witness and based on that representation, Defendant's seventeenth motion in limine appears to now be moot. The Court otherwise reserves any rulings as to the admissibility of Keri Dennis's testimony until trial.

### Eighteenth Motion in Limine – Use of Depositions of Witnesses Other than the Witness Being Questioned, Depositions of Richard Jordan, and Evidence of One Witness's Opinion of Another Witness's Testimony

Progressive raises concerns about Plaintiff's potential improper use of deposition testimony at trial and moves for an order in limine: "(1) prohibiting Plaintiff from utilizing, during the testimony of any witness being presented (whether live or by video), the transcripts or video of the depositions of any witness other than the witness being questioned; (2) limiting Plaintiff's use of the prior depositions of Richard Jordan ("Jordan"), Progressive's corporate representative; and (3) barring Plaintiff from eliciting evidence of one witness's opinion of another witness's testimony." Def.'s Mot at 16.

**\*9** In response, Plaintiff argues that Progressive's witnesses, Mr. Jordan, Mr. Dyer and Ms. LaCava, all testified as corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6) and, therefore, pursuant to Fed. R. Civ. P. 32(a)(3), Plaintiff's permitted use of their testimony is more expansive than that urged by Progressive. [9] Plaintiff further argues that she has an absolute right to play Mr. Jordan's videotaped deposition to the jury for any purpose authorized by Fed. R. Civ. P. 32(a)(3), notwithstanding the fact that he will be present at trial and available to give live testimony. Finally, Plaintiff argues that asking one witness whether that witness "agrees" with the testimony of another witness "is not asking for one witness' opinion about the credibility of another and thus, the Court should refuse Progressive's requested prohibition on Plaintiff's counsel's use of deposition

testimony during the examination of a witness." Pl.'s Resp. at 4-5.

As to the first issue – use of one witness's deposition testimony during the deposition of another witness – both parties point to *Coletti v. Cudd Pressure Control*, 165 F.3d 767 (10th Cir. 1999) as instructive. There, the Tenth Circuit held that pursuant to Fed. R. Civ. P. 32(a)(2), a party can introduce as substantive proof the deposition of a party or of an officer, director, managing agent or a person designated under Rule 30(b)(6). [10] Thus, the court acknowledged that the plaintiff properly designated "certain segments of deposition testimony of Cudd employees" that the plaintiff sought to introduce as statements against interest. *Id.* at 773. But the court further held that "the admission of deposition testimony still remains subject to the sound discretion of [the] trial court" and that the trial court could limit use of the material if, for instance, it was repetitious or immaterial. *Id.* at 774.

The Court, therefore, declines to broadly exclude – by in limine ruling – Plaintiff's reference to one witness's deposition testimony during the deposition of another witness. Instead, the Court will address this matter at trial. The Court notes, however, that Plaintiff's counsel is to avoid manipulating the evidence or misrepresenting testimony by presenting segments (or, as Progressive argues, "snippets") of a witness's testimony out of context. And, Plaintiff's counsel is to avoid "testifying" as to what his interpretation is of testimony of certain witnesses during his questioning of other witnesses – whether through the wording of his questions or through exhibits which represent *counsel's own view or interpretation* of the evidence. Such tactics impermissibly invade the province of the jury. Additionally, the Court expects the streamlined presentation of witnesses in this matter. Thus, Plaintiff's counsel will not be permitted to delay trial by prolonged presentation of one witnesses's deposition testimony during the trial testimony (whether live or by deposition) of other witnesses. To the extent such tactics constitute duplicative presentation of a witness's testimony, it will not be allowed and Plaintiff's counsel is forewarned that he should modify his case presentation accordingly.

As to the second issue, Plaintiff is correct that Fed. R. Civ. P. 32(a)(3) permits the use of Mr. Jordan's deposition testimony even if Mr. Jordan is present at trial.

But such use remains subject to the Court's discretion. Again, the Court reserves any ruling on this matter for trial. Plaintiff's counsel is admonished not to unduly protract the trial and is forewarned that the Court does not contemplate permitting lengthy presentation of Mr. Jordan's deposition testimony. In this regard, the Court expresses concern as to the parties' disputes regarding the extent to which Mr. Jordan's deposition testimony falls within the scope of the Rule 30(b)(6) designations. The parties are encouraged to work together to resolve these disputes so as to prevent unnecessary delay during trial.

**\*10** Finally, Progressive is correct that, as a general matter, a lawyer should not ask a witness whether an earlier witness testified truthfully. Under Fed. R. Evid. 701, a witness is not allowed to give an opinion as to the truthfulness of another witness's *testimony*. And, although under particular circumstances, Fed. R. Evid. 608, permits a witness to give an opinion as to another witness's *character* for truthfulness, the examples of testimony cited by Progressive as objectionable do not appear to fall within the purview of Rule 608. Moreover, it is well-established that it is the role of the jury to evaluate the credibility of witnesses. *See, e.g., Thunder Basin Coal Co. v. Southwestern Public Service Co.*, 104 F.3d 1205, 1212 (10th Cir. 1997) ("The jury ... has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." (internal quotation marks and citation omitted). Therefore, questions about the truthfulness of another witness's testimony would improperly invade the province of the jury.

But asking whether one witness agrees with the testimony of another witness is not necessarily objectionable. *See, e.g., United States v. DeSimone*, 699 F.3d 113, 127 (1st Cir. 2012) (recognizing that it is improper for an attorney to ask a witness whether another witness lied on the stand but stating "[t]his rule is not read broadly" and that "[t]here is no error in simply asking a witness if he agreed with or disputed another witness's testimony"). Therefore, the Court declines to make a blanket in limine ruling as requested by Progressive. Instead, the Court will address whether the testimony at issue is admissible at trial and/or in the context of ruling on the specific testimony of any witness identified in the parties' trial deposition designations.

For these reasons, Progressive's eighteenth motion in limine is denied without prejudice. Notwithstanding the Court's reservation of a ruling on the matters raised, the parties are to heed the parameters set forth herein and be prepared to modify trial presentations accordingly.

### Nineteenth Motion in Limine – Evidence of the Location or Size of Progressive and the Number of Employees of Progressive

Progressive contends that the "location of Progressive's home office, the number of employees working for Progressive, and the number of Progressive claims offices nationwide, are not relevant to any of the issues or claims in the present lawsuit" and, therefore, that any mention of these matters would be unfairly prejudicial and confuse the issues. Def.'s Mot. at 2. In support, Progressive cites excerpts of the deposition testimony of its adjuster, Robin LaCava. In response, Plaintiff argues Ms. LaCava's deposition testimony is evidence of Progressive's "systematic business practice to delay payment of unpaid contractual benefits post-litigation" and is admissible evidence of bad faith. Pl.'s Resp. at 3. As to any other witness testifying to these matters, Plaintiff represents that "the likelihood of Plaintiff's counsel asking the questions Progressive is concerned about is very low." *Id.*

The Court will address any objections to specific trial deposition testimony of Ms. LaCava by separate rulings on the parties' designations of testimony. Otherwise, the Court reserves its ruling on these matters until trial and Progressive's Nineteenth Motion in Limine is denied without prejudice. Plaintiff's counsel is reminded, however, as discussed infra in the context of Progressive's Twenty-Second Motion in Limine, that evidence related to the issue of punitive damages is limited to second-phase trial proceedings.

### Twentieth Motion in Limine – Exclusion of Reference to Certain of Plaintiff's Trial Exhibits

Progressive raises an objection to five categories of trial exhibits in its twentieth motion in limine. First, Progressive objects to Plaintiff's Trial Exhibit 80, identified as documents pertaining to "financial damages" and argues, once again, that Plaintiff does not seek damages for financial loss in this litigation. Def.'s Mot. at

2 and Exhibit 1. Additionally, according to Progressive, the documents were not included on Plaintiff's Final Exhibit List and were not produced until March 14, 2018. In response, Plaintiff argues the documents show Plaintiff's out-of-pocket expenses during the time period relevant to her bad faith claim and "inform her non-economic damages." Pl.'s Reply at 2. Plaintiff, however, fails to directly address Progressive's argument that Plaintiff did not include these documents on her Final Exhibit List. Instead, Plaintiff contends Progressive cannot claim unfair surprise because it has had this "information" since 2014.

**\*11** Whether Progressive may have had some or all of the information included in Plaintiff's Trial Exhibit 80 does not address Plaintiff's failure to include those documents on her Final Exhibit List. Plaintiff has not sought leave to amend her Final Exhibit List or otherwise addressed Plaintiff's conduct in failing to comply with the Court's Scheduling Order. [11] Under these circumstances, the Court finds Plaintiff is precluded from using the documents included in Trial Exhibit 80 at trial.

Second, Progressive moves to exclude exhibits that include "documentation showing that her medical payments claim submitted to Progressive was denied." Def.'s Mot. at 5. In response, Plaintiff argues that Progressive has failed to identify what documents it seeks to exclude regarding Plaintiff's "med pay" claim but does not address the issue of the relevance of any such documents. Without reference to any specific exhibit, however, the Court cannot make any admissibility determination. Plaintiff is cautioned, however, that because the med-pay claim is not at issue in this litigation, she will carry a heavy burden to demonstrate the requisite relevance of any documents related to the denial of that claim.

Third, Progressive moves to exclude documents pertaining to the current health problems of Mr. Dennis, Plaintiff's husband. As Plaintiff argues in response, Progressive does not identify any documents in support of its motion. Again, without reference to any specific exhibit, the Court declines to make an admissibility determination at this time. However, Plaintiff's counsel is forewarned that Plaintiff will carry a heavy burden to demonstrate the requisite relevance of documents pertaining to Mr. Dennis's health.

Fourth, Progressive notes the habit of Plaintiff's counsel to reference redacted documents produced by Progressive and then infer that the fact of the redaction demonstrates some type of improper conduct. Progressive argues that "Plaintiff and her counsel should not be allowed to infer to the jury that Progressive's rightful invocation of the attorney-client privilege is somehow improper." Def.'s Mot. at 7. In response, Plaintiff argues that Progressive should not be able to use its privilege as both a sword and a shield. Pl.'s Resp. at 5. Plaintiff's argument is misplaced. At issue is not whether Progressive has a right to claim a privilege. The parties appear to agree on that point and Plaintiff has not challenged the redactions on grounds the information contained therein is not privileged. Under these circumstances, any reference to the fact of redaction would be unduly prejudicial. *See* Fed. R. Evid. 403; *see also Roesler v. TIG Ins. Co.*, 251 F. App'x 489, 499-500 (10th Cir. 2007) (recognizing an insurance company's right to seek legal advice and protect privileged communications). The Court, therefore, grants Progressive's motion and directs Plaintiff and her counsel not to make impermissible references to the redactions as indicating any improper withholding of information on the part of Progressive.

**\*12** Fifth, Progressive moves to prohibit Plaintiff from alleging that Progressive did not timely produce certain documentation related to Progressive's training materials in the course of the state-court litigation. Progressive cites a single exhibit in support of its motion, Plaintiff's Trial Exhibit 5, which is an excerpt of Progressive's discovery responses in the state-court action. In response, Plaintiff does not specifically address Trial Exhibit 5, but argues that Progressive's discovery conduct is relevant, inter alia, to show Mr. Jordan, Progressive's corporate representative, did not disclose the existence of all training materials during his deposition taken in the state-court litigation. The parties' briefing suggests that matters related to the conduct of the parties during the discovery phase of either this action – or particularly, the state-court action – would run far afield of the issues to be decided by the jury. Counsel, therefore, are cautioned not to introduce such matters at trial. Nonetheless, the Court reserves any ruling on this matter until trial when the Court can address the matter in a context-specific manner.

The sixth and final exhibit challenged by Progressive in its twentieth motion in limine is "time lines prepared by counsel" and identified as Plaintiff's Trial Exhibit 79.

*See* Def.'s Mot. at 10 and Exhibit 6. Progressive argues Trial Exhibit 79 has never been produced. Progressive also moves to exclude a time line prepared by counsel for Progressive to prepare Chris Dyer for his corporate testimony. Progressive did not attach that time line to its motion for the Court's review.

In response, Plaintiff states it intends to use these time lines as demonstrative exhibits to assist the jury. The Court finds Plaintiff's Trial Exhibit 79 is inadmissible. The time line is exceedingly detailed and includes information outside the scope of the issues presented in this litigation. For example, the time line includes references to Plaintiff's workers' compensation claim, correspondence from Plaintiff's workers' compensation insurer, and notations concerning a "discovery hearing" – purportedly in the state-court litigation. To the extent Plaintiff claims this is a demonstrative aid, the Court finds such an aid would not assist the jury but cause undue confusion and is otherwise prejudicial. [12] With respect to the time line prepared by counsel for Progressive, as noted, Progressive has not provided that time line for the Court's review. Therefore, the Court cannot adequately assess its admissibility.

For the reasons set forth, Progressive's twentieth motion in limine is granted in part and denied without prejudice in part.

### Twenty-First Motion in Limine – Exclusion of Plaintiff's Proposed Trial Exhibits 25-29, 32, 33, 38, 39, 41, 43, 56, 58 and 65: Plaintiff's Counsel's Handwritten Notes and the Unfair Claims Settlement Practices Act

Progressive moves to exclude Plaintiff's Trial Exhibits 25-29, 32, 33, 38, 39, 41, 43, 56, 58 and 65. Exhibits 25, 26, 27, 28, 29, 32, 33, 38, 39, 41, 56 and 58 are notes handwritten on a legal pad by Plaintiff's counsel which he created and/or used during the course of the depositions of various witnesses. Exhibit 43 is a worksheet used by Progressive for training purposes, but the worksheet includes substantial notations by Plaintiff's counsel which he created and/or used during the course of depositions. Progressive also includes a document which is not included on Plaintiff's Exhibit List, but which Progressive believes Plaintiff may attempt to add. *See* Def.'s Mot. at 3 and Exhibit 14.

Plaintiff argues the identified trial exhibits are demonstrative aids. Plaintiff states that these Trial Exhibits were used in the depositions of witnesses and "have been captured in the video." Pl.'s Resp. at 2. Plaintiff argues she does not intend to seek admission of the exhibits at trial but rather she is "seeking to have the exhibits appropriately published to the jury as part of both the deposition clips and in questioning the witnesses who will be live at trial." *Id.* According to Plaintiff, "[t]hese exhibits are also independently relevant as illustrations to what the witnesses testified" and were "contemporaneously used in the depositions to signpost the witnesses' testimony as the deposition progressed." *Id.* Plaintiff argues that demonstrative exhibits are proper, especially in conjunction with a proper instruction to the jury.

 **\*13** The Court finds the exhibits at issue are not proper demonstrative aids. The exhibits do not, for example, reduce evidence to a simpler form. *See, e.g., United States v. Downen*, 496 F.2d 314, 321 (10th Cir. 1974). Instead, the exhibits are the handwritten notes of Plaintiff's counsel that, for the most part, constitute counsel's own view of the evidence or his summary of witness testimony. The exhibits, therefore, do not attempt to simplify evidence, but instead, improperly characterize or weigh evidence. Therefore, Plaintiff's counsel will not be permitted to publish these exhibits to the jury. For the reasons set forth, Progressive's twenty-first motion in limine is granted. [13]

### Twenty-Second Motion in Limine – Exclusion of Any Reference to Punishing the Defendant and/or Punitive Damages Arguments in the First Stage of Trial

In its twenty-second motion in limine, Progressive seeks an order in limine prohibiting any reference to, or mention of, punitive damages or punitive damages arguments until the Court has made a determination that punitive damages are appropriate in this case. Included in this request, Progressive moves to exclude any argument or comment as to "punishing" Progressive or "sending a message" to Progressive.

Under Oklahoma law, punitive damages are recoverable for breach of the duty of good faith and fair dealing if there is evidence that the insurance company acted with reckless disregard or malice. Punitive damages are addressed in two stages. *See* Oklahoma Uniform Jury Instruction (OUJI)-CIV, Instruction No. 22.5. If the jury finds in favor of the plaintiff and awards actual damages, the jury must find, by a separate verdict, whether clear and convincing evidence establishes the defendant acted with reckless disregard or malice. If the jury makes this separate finding, second stage proceedings commence and evidence is presented as to the amount of punitive damages. A second stage instruction is then given to the jury to determine the amount of punitive damages. *See* OUJI-CIV, Instruction No. 22.7.

Plaintiff acknowledges that "punishment is for phase two of the trial" but Plaintiff argues "the breadth of evidence and argument Progressive seeks to inhibit is improper." Pl.'s Reply at 4.

The Court grants Progressive's Twenty-Second Motion in Limine in part. The Court prohibits reference to, argument about or the admission of evidence of punitive damages during the first phase of trial. The prohibition includes any reference to punishing Progressive or making an example of Progressive. Plaintiff is not, however, prohibited from making statements or argument or admitting evidence regarding whether Progressive's conduct constitutes reckless disregard or malice. If evidence supports a showing of reckless disregard or malice and the jury in fact makes such a finding, only then will Plaintiff be permitted to put on evidence of punitive damages. Accordingly, Progressive's twenty-second motion in limine is granted in part and denied without prejudice in part.

### Twenty-Third Motion in Limine Hypothetical Questions Not Based on Facts in Evidence

 **\*14** Progressive references the fact that "[d]uring nearly every deposition, Plaintiff's counsel framed questions to the deponents as 'hypotheticals' " and moves for an order in limine prohibiting Plaintiff's counsel from "attempting to elicit testimony in response to hypothetical questions based on facts not in evidence or referencing any such hypothetical scenarios as if they reflected facts not in evidence." Def.'s Mot. at 4. Of particular concern to Progressive appears to be hypotheticals "regarding 'pro rata share' and the manner in which pro rata apportionment is mathematically calculated." *Id.* at 6. Progressive cites examples from excerpts of deposition testimony of Linda Riley and Shonda Campbell. Ms.

Riley was the Progressive adjuster handling Plaintiff's claim on her personal UM policy and Ms. Campbell was the Progressive adjuster handling Plaintiff's claim on the commercial policy. Progressive contends hypothetical calculations of pro rata apportionment of Plaintiff's claim based on the policy limits of the commercial policy are not relevant and should be excluded. Progressive also references hypotheticals presented to witnesses regarding internal claims handling standards and moves to prohibit the introduction of such hypotheticals into evidence.

In response, Plaintiff argues that Ms. Riley and Ms. Campbell routinely perform pro rata calculations as part of their job duties and, therefore, it is permissible to present their testimony as to hypothetical calculations of pro rata apportionment. Plaintiff further argues that Progressive can challenge the hypothetical calculations through cross-examination.

To the extent Progressive moves to exclude any specific trial deposition testimony, any objections are best addressed by separate rulings on the parties' designations of testimony. At this time, it appears to the Court that the challenged hypothetical calculations are sufficiently tied to evidence regarding any improper pro rata agreements so as to be permissible – and that Progressive can point out deficiencies in these calculations through cross-examination or other witness testimony. The Court, however, reserves any ruling on this matter until trial and denies Progressive's motion without prejudice. The Court further cautions Plaintiff's counsel against making statements, argument or inferences, premised on facts not in evidence, or using hypotheticals in a manner that misstates the relevant evidence.

**Twenty-Fourth Motion in Limine
– Use of Pejorative Phrases**

Citing examples from various excerpts of deposition testimony, Progressive moves for an order in limine to prohibit Plaintiff's counsel from using what Progressive characterizes as "pejorative phrases." In response, Plaintiff's counsel states that at trial, counsel agree to abide by all governing rules and will conduct themselves accordingly. To the extent Progressive challenges specific trial deposition testimony, any objections are best addressed by separate rulings on the parties' designations of testimony. Otherwise, the Court reserves any rulings

on these matters until trial. Progressive's twenty-fourth motion in limine is denied without prejudice.

**IV. Conclusion**

For the reasons set forth, the Court finds Defendant's motions in limine should be granted in part and denied in part. The Court has reserved ruling on certain matters raised, and as to those matters, Defendant's motions are denied without prejudice.

IT IS THEREFORE ORDERED as follows:

Progressive's First Motion in Limine [Doc. No. 90] is GRANTED;

Progressive's Second Motion in Limine [Doc. No. 94] is GRANTED in part, and DENIED WITHOUT PREJUDICE in part;

Progressive's Third Motion in Limine [Doc. No. 96] is DENIED WITHOUT PREJUDICE;

Progressive's Fourth Motion in Limine [Doc. No. 100] is DENIED WITHOUT PREJUDICE;

Progressive's Fifth Motion in Limine [Doc No. 107] is DENIED WITHOUT PREJUDICE;

Progressive's Sixth Motion in Limine [Doc. No. 110] is DENIED.

Progressive's Seventh Motion in Limine [Doc. No. 111] is DENIED WITHOUT PREJUDICE;

Progressive's Eighth Motion in Limine [Doc. No. 113] is DENIED WITHOUT PREJUDICE;

Progressive's Ninth Motion in Limine [Doc. No. 121] is GRANTED in part and DENIED in part;

Progressive's Tenth Motion in Limine [Doc. No. 122] is DENIED WITHOUT PREJUDICE;

**\*15** Progressive's Twelfth Motion in Limine [Doc. No. 124] is DENIED WITHOUT PREJUDICE;

Progressive's Fifteenth Motion in Limine [Doc. No. 127] is DENIED WITHOUT PREJUDICE;

Progressive's Sixteenth Motion in Limine [Doc. No. 128] is GRANTED;

Progressive's Seventeenth Motion in Limine [Doc. No. 129] is DENIED as MOOT or. alternatively, DENIED WITHOUT PREJUDICE;

Progressive's Eighteenth Motion in Limine [Doc. No. 131] is DENIED WITHOUT PREJUDICE;

Progressive's Nineteenth Motion in Limine [Doc. No. 140] is DENIED WITHOUT PREJUDICE;

Progressive's Twentieth Motion in Limine [Doc. No. 159] is GRANTED in part and DENIED WITHOUT PREJUDICE in part;

Progressive's Twenty-First Motion in Limine [Doc. No. 183] is GRANTED;

Progressive's Twenty-Second Motion in Limine [Doc. No. 184] is GRANTED in part and DENIED WITHOUT PREJUDICE in part;

Progressive's Twenty-Third Motion in Limine [Doc. No. 185] is DENIED WITHOUT PREJUDICE; and

Progressive's Twenty-Fourth Motion in Limine [Doc. No. 186] is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that with respect to any reserved ruling, the Court cautions counsel to approach the bench and seek a ruling before eliciting any challenged evidence or testimony.

IT IS SO ORDERED this 9th day of April, 2018.

**All Citations**

Slip Copy, 2018 WL 4871039

## Footnotes

1    *See* Doc. Nos. 90 (First), 94 (Second), 96 (Third), 100 (Fourth), 107 (Fifth), 110 (Sixth), 111 (Seventh), 113 (Eighth), 121 (Ninth), 122 (Tenth), 124 (Twelfth), 127 (Fifteenth), 128 (Sixteenth), 129 (Seventeenth), 131 (Eighteenth), 140 (Nineteenth), 159 (Twentieth), 183 (Twenty-First), 184 (Twenty-Second), 185 (Twenty-Third) and 186 (Twenty-Fourth).

2    *See* Doc. Nos. 105 (First), 112 (Second), 118 (Third), 142 (Fourth), 189 (Fifth), 191 (Sixth), 192 (Seventh), 194 (Eighth), 217 (Ninth), 218 (Tenth), 220 (Twelfth), 223 (Fifteenth), 225 (Sixteenth), 229 (Seventeenth), 238 (Eighteenth), 240 (Nineteenth), 241 (Twentieth), 244 (Twenty-First), 245 (Twenty-Second), 246 (Twenty-Third) and 248 (Twenty-Fourth).

3    *See* Doc. Nos. 120 (First), 130 (Second) 188 (Third), 226 (Fifth), 231 (Seventh), 232 (Eighth) and 261 (Sixteenth).

4    The Court has previously found Progressive's Motions in Limine Eleven, Thirteen and Fourteen [Doc. Nos. 123, 125 and 126] are moot based on Plaintiff's concessions in responding to those motions. *See* Minute Order [Doc. No. 265].

5    Citations to the parties' submissions reference the Court's ECF pagination.

6    Section 1250.3 (B) provides:

     It is an unfair claim settlement practice for any insurer to commit any act set out in Section 1250.5 of this title, or to commit a violation of any other provision of the Unfair Claims Settlement Practices Act, if:

     1. It is committed flagrantly and in conscious disregard of this act or any rules promulgated hereunder; or

     2. It has been committed with such frequency as to indicate a general business practice to engage in that type of conduct.

     Okla. Stat. tit. 36, § 1250.3(B).

7    In support of its Motion, Progressive references excerpts of the deposition testimony of two of its employees, Richard Jordan and Linda Riley. But Progressive does not move to exclude any specific testimony. Instead, Progressive seeks a blanket exclusion.

8    In *Vining*, the Tenth Circuit deemed admissible testimony of other claimants who had purchased life insurance policies and subsequently had those policies rescinded by the insurance company. The insurance company's rescission of the policy formed the basis for the plaintiff's bad faith claim. The Tenth Circuit held that how the insurance company treated other claimants was "expressly allowed under Federal Rule of Evidence 406." *Id.* at 1219. As the Tenth Circuit explained, "[t]he only impact such evidence might have had on the jury was to convince them that Enterprise habitually denied claim in bad faith, precisely the point Vining wished to prove." *Id.*

9    Plaintiff excludes reference to Ms. Riley's deposition testimony and otherwise does not address Progressive's argument that Ms. Riley testified only as a witness and not as a corporate representative. Thus, Plaintiff offers no support for why she should be permitted to show Ms. Riley's deposition testimony to other witnesses during examination of those witnesses.

10   The current text of Rule 32(a)(3) was previously designated as Rule 32(a)(2).

11   The Amended Scheduling Order [Doc. No.32] required Plaintiff to file a final list of exhibits by December 1, 2017. That deadline was never extended by the Court. Pursuant to Rule 16(b)(4), the court's scheduling order may be modified only for good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citation omitted). "Rule 16's good cause requirement may be satisfied, for example, if a [party] learns new information through discovery[.]" *Id.* Good cause for an extension "is usually occasioned by something that is not within the control of the movant." *Utah Republican Party v. Herbert*, 678 F. App'x 697, 700-01 (10th Cir. 2017) (citation omitted). Plaintiff has failed to make the requisite showing to warrant modification of the scheduling order. Plaintiff offers no reason why the scheduling deadline could not be met.

12   For example, the time line includes a notation that on 12/21/15 "[d]efense counsel objects to our request for a change of physician." *See* Def.'s Mot., Exhibit 6 at 5. It appears the defense counsel referenced is defense counsel in the workers' compensation proceedings. But the jury could easily confuse such a notation as a reference to Progressive's counsel and infer that the objection was somehow improper.

13   Progressive states in its motion that "Plaintiff's proposed Trial Exhibit 33, attached hereto as EXHIBIT 7, is a printout of 36 O.S. § 1250.5, the provision of the.... OUCSPA[.]" Def.'s Mot. at 7. The attached Exhibit 7, however, is a handwritten note of Plaintiff's counsel. And no exhibit attached to Progressive's motion is a printout of the OUCSPA. Thus, the Court is unable to identify the specific trial exhibit Progressive seeks to exclude. Regardless, the Court has ruled that evidence related to the OUCSPA is not admissible. Therefore, Progressive's motion in limine is granted as to any printout of the OUCSPA.

---

**End of Document**                                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.